UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID RUBIN,

                          Plaintiff,

           -against-

HSBC BANK USA, NA, EQUIFAX
INFORMATION SERVICES LLC, and
EXPERIAN INFORMATION SOLUTIONS,
INC.,

                          Defendants.

1:20-cv-04566-NRM-SJB

PLAINTIFF'S RESPONSE TO DEFENDANT
HSBC BANK USA, N.A.'S STATEMENT OF
MATERIAL FACTS AND ADDITIONAL
STATEMENTS OF MATERIAL FACT

## I.  Plaintiff's Response to Defendant HSBC Bank USA, N.A.'s Statement of Material Facts

Pursuant to Local Civil Rule 56.1(b–d) and Your Honor's Individual Rules and Practices
Rule 5.5.1, plaintiff David Rubin ("Rubin") hereby submits this Response to defendant HSBC
Bank USA, N.A.'s ("HSBC") Statement of Material Facts in support of its pre-motion letter
seeking a pre-motion conference on a Motion for Summary Judgment and states:

**A.      The Opening Of The HSBC Credit Card Account And Activation Of The Account**

1.       On or about October 9, 2019, plaintiff David Rubin ("Rubin") applied for and
HSBC approved his application for an HSBC Gold MasterCard credit card with an account
number ending in 2229 (the "Account") and HSBC mailed the physical credit card to him at the
address he provided on his Account application—283 S 5th Street, Apt. 4, Brooklyn, New York
11211-6213 ("Rubin's Address").  (Deposition of Nancy Taylor ("Taylor Depo."), 124:7-25,
165:20-166:11, Ex. D; HSBC's Response to Plaintiff's Interrogatory No. 2.)[1]

---

[1] The cited deposition excerpts and documents are either attached to the Declaration of Brian C.
Frontino ("Frontino Decl." ), attached hereto as Exhibit 1, or elsewhere in the record as identified
in the Frontino Declaration.

**Response:** Not disputed.

2.      HSBC maintains an Interactive Voice Response system (the "IVR System"), which an HSBC customer may call to, among other things, activate a new HSBC credit card. (Deposition of Brian Defontes ("Defontes Depo.") 8:21-10:7.)

**Response:** Not disputed.

3.      Pursuant to HSBC's card activation procedures, a cardholder must provide HSBC with the following information when calling the IVR System to activate a new HSBC credit card: (1) the full 16-digit card number; (2) the 3-digit CVC number on the back of the physical credit card; and (3) the last four digits of the cardholder's Social Security Cumber. (Id. 29:6-30:11.)

**Response:** Disputed.  Anyone, whether the cardholder or not, calling from any number, can activate an HSBC credit card by calling the IVR System with the full sixteen-digit card number, the three-digit CVC number, and the last four digits of the cardholder's Social Security number.  Deposition of George Mossios ("Mossios Depo.") 91:14–91:20, 92:8–92:11, Ex. 12; Deposition of Nancy Taylor ("Taylor Depo.") 53:7–53:25, Ex. 11; Deposition of Brian DeFontes ("DeFontes Depo.") 32:16–37:6; 37:20–38:20, 38:25–39:24, 41:5–41:11, Ex. 13; Deposition of Lance Watson ("Watson Depo.") 8:13–10:25, 29:16–30:3, Ex. 14; Expert Witness Disclosure of Lance Watson ("Watson Report") 5–7, Ex. 16.[2]

4.      On October 17, 2019, at approximately 12:33 p.m., the credit card for the Account was activated using the IVR System from the telephone number that Rubin provided on his

---

[2] The cited deposition excerpts, Plaintiff declaration, discovery responses, documents, and other exhibits are attached as exhibits to the Declaration of Adam G. Singer, filed herewith. Exhibits 11, 12, 13, 14, and 16 were filed separately under seal as requested by HSBC.

Account application: (512) 627-0424 ("Rubin's Telephone Number"). (Id. 21:3-22:13, 24:5-12, 32:16-34:23, Ex. 3.)

**Response:** Disputed.  It was not activated from that telephone number.  If it was activated, it was activated from another telephone number using spoofing, i.e., disguising a call from one phone number as coming from a different number, to fraudulently appear to be Rubin's telephone number.  Deposition of David Rubin ("Rubin Depo.") 43:4–43:14, 48:12–49:5, 54:15–54:18, Ex. 7; Initial Report of Jason R. Lewis ("Lewis Report") 4, Ex. 15; Rebuttal Report of Jason R. Lewis ("Lewis Rebuttal") 3, Ex. 17; Watson Depo. 12:21–13:2.  Phone number spoofing is commonplace and easy to do.  Lewis Report 4; Watson Depo. 13:21–14:2, 20:9–21:3, 23:4–23:14; Watson Report 6.

5.    During that October 17, 2019, call to the IVR System, the following information was provided to HSBC to activate the Account: (1) the full 16-digit credit card account number; (2) the CVC security code on the back of the physical credit card that HSBC mailed to Rubin's Address; and (3) the last four digits of Rubin's Social Security Number. (Id.)

**Response:** Not disputed.

6.    Approximately two minutes after HSBC received the activation call from Rubin's Telephone Number, HSBC received a second phone call from Rubin's Telephone Number, which lasted approximately 79 seconds but was not ultimately connected to an HSBC agent. (Id. 21:3-22:13, Ex. 3; 42:9-44:6.)

**Response:** Disputed.  HSBC received neither the activation call nor the second phone call from Rubin's telephone number, but rather from another telephone number using spoofing to fraudulently appear to be Rubin's telephone number.  Rubin Depo. 43:4–43:14, 48:12–49:5, 54:15–54:18; DeFontes Depo. 42:9–55:25, 58:4–59:11, 68:17–69:6; Lewis Rebuttal 3.  That the

3

second call was aborted is itself indicative of fraud: it is likely that the second call was the fraudster attempting to set a PIN for the card.  *Id.* at 5; Lewis Report 5; Watson Depo. 23:4–23:14.

**B.    The BJ's Charge And Immediate Fraud Claim Submitted By Rubin**

7.    Also on October 17, 2019, the Account was used to complete a $1,850.85 purchase at BJ's Wholesale, Inc. (the "BJ's Charge"). (Taylor Depo. 166:19-167:21, Ex. E.)

**Response:** Not disputed.

8.    That same day, on October 17, 2019, HSBC received a third call from Rubin's Telephone Number that was recorded, in which Rubin claims that he received a fraud alert from HSBC regarding an attempted purchase on the Account. (Defontes Depo. 62:8-17.)

**Response:** Disputed.  HSBC did receive the call in question, but this was the *first* call HSBC received on October 17, 2019, that was actually from Rubin's telephone number.  The earlier calls were not from Rubin's telephone number and must have been made from another telephone number using spoofing to fraudulently appear to be Rubin's telephone number.  The third call also did not appear on Rubin's phone bill, but that was because he had used wifi calling as he was in a rural area with poor cell-phone reception.  Rubin Depo. 43:4–43:14, 48:12–49:5, 54:15–54:18; Lewis Rebuttal 3–4.

9.    In November 2019, HSBC mailed an account statement to Rubin's Address reflecting the BJ's Charge. (Taylor Depo. 166:19-167:21, Ex. E; HSBC's Response to Plaintiff's Interrogatory No. 3.)

**Response:** Not disputed.

10.    On October 17, 2019, Rubin called HSBC again from Rubin's Telephone Number to submit a fraud claim regarding the BJ's Charge. (Deposition of George Mossios ("Mossios Depo.") 90:7-91:8, Ex. I; Defontes Depo. 21:3-22:13, Ex. 3.)

**Response:** Not disputed.

11.    HSBC issued Rubin a new physical card for the Account and sent it to Rubin's Address, of which he confirmed receipt. (Deposition of David Rubin ("Rubin Depo.") 51:8-16.)

**Response:** Not disputed.

**C.    HSBC's Investigation of Rubin's Fraud Claim**

12.    Upon receipt of Rubin's fraud claim, HSBC investigated and confirmed that the Account was activated during a phone call HSBC received to the IVR System from Rubin's Telephone Number and the following information was provided: (1) the full 16-digit credit card Account number; (2) the CVC security code on the back of the physical credit card that HSBC mailed to Rubin's home address provided on his Account application; and (3) the last four digits of Rubin's Social Security Number. (Mossios Depo. 90:7-92:22; Defontes Depo. 74:17-77:20.)

**Response:** Disputed.  HSBC did not confirm that the account was activated from Rubin's telephone number, because in fact it was not activated from Rubin's telephone number, but rather from another telephone number using spoofing to fraudulently appear to be Rubin's telephone number.  Rubin Depo. 43:4–43:14, 48:12–49:5, 54:15–54:18; Lewis Rebuttal at 3. Nor was HSBC's investigation—to the extent its activities constituted an investigation at all— even possibly capable of confirming or disconfirming that the activation call actually came from Rubin's telephone number.  DeFontes Depo. 83:5–83:21; Mossios Depo. 41:20–44:18, 85:21– 85:25, 91:6–91:9.  HSBC's fraud investigator received no training on how to deal with call spoofing; he had not even been warned to be on the alert for it.  *Id.* at 25:15–26:6, 41:20–44:18;

5

91:6–91:23.  HSBC's operations manager for claims and investigations even admitted that she did not know whether it would have been possible for an identity thief to fraudulently activate a credit card.  Taylor Depo. 118:2–118:7, 119:8–120:24, 121:13–123:3, 123:17–124:8.  And HSBC spent no more than six days on this supposed investigation, instead of the standard 90 days.  *Id.* at 116:17–117:12.  Furthermore, it is not clear that HSBC's fraud department would itself have had access to the card activation data on which it so entirely relied.  DeFontes Depo. 59:24–61:4.

13.     On October 23, 2019, HSBC sent a letter to Rubin advising him that it was denying his fraud claim. (Mossios Depo. 64:10-25 & Ex. D.)

**Response:** Not disputed.

14.     On October 29, 2019, Rubin contacted HSBC regarding his fraud claim and an HSBC representative advised Rubin to file a police report and a mail theft report at his local post office. (Id. 105:9-108:6, 109:14-110:7 & Ex. M.)

**Response:** Not disputed.

15.     On February 25, 2020, four (4) months after HSBC advised Rubin to file a police report, he contacted HSBC and provided HSBC with information regarding the police report that he filed with the New York Police Department (the "Police Report") and advised that the detective on the matter was named Ruth Pareeds. (Id.)

**Response:** Disputed.  Rubin filed the report with the police on October 29, 2019, and subsequently advised HSBC that the detective on the matter was named Ruth Paredes.  Credit Disputes at EXPERIAN_20-CV-4566_000001, Ex. 3; Rubin Depo. 62:16; Taylor Depo. 60:11–60:14.  He informed HSBC of this more than a month before he filed his first credit-reporting dispute on April 3, 2020.  Taylor Depo. 62:17–62:25, 67:13–67:16.  He provided HSBC with

6

Detective Paredes's phone number, email address, and his case number. Declaration of David Rubin ("Rubin Decl.") ¶ 34, Ex. 1; Rubin Calls with HSBC ("Rubin/HSBC Calls") at HSBC000014, Ex. 6. He also provided substantial other evidence to HSBC. Mossios Depo. 68:4–71:25.

16.     Thereafter, on March 2, 2020, an HSBC representative called the New York Police Department regarding the Police Report but was unable to speak with anyone or leave a message and, thus, following a subsequent review of the fraud claim, HSBC determined that the fraud claim should remain denied. (Id.)

**Response:** Disputed. HSBC determined to continue denying the fraud claim because it gave undue weight to the fact that whoever activated the card had had the card number, CVC security number, and the last four digits of Rubin's Social Security number, and appeared to be calling from Rubin's telephone number—despite the fact that HSBC does not require a phone number match to activate a card in the first place and cannot detect phone-number spoofing— and because HSBC also substantially discounted all of the other evidence it had received, and because it failed to obtain any other evidence supporting its conclusions. Mossios Depo. 41:20– 44:18, 64:24–64:14, 68:4–85:25, 88:7–89:8, 128:22–130:3; Taylor Depo. 63:23–64:6, 64:10– 64:15, 64:21–65:6, 65:14–66:10, 68:13–69:16, 118:2–118:7, 119:8–120:24, 121:13–123:3, 123:17–124:8; Lewis Report 5, 9; Watson Report 5–7; Watson Depo. 15:23–16:9, 23:4–23:14, 29:16–30:3.

17.     Thereafter, on March 31, 2020, an HSBC representative again called the New York Police Department regarding the Police Report but was unable to speak with anyone or leave a message and, thus, following a subsequent review of the fraud claim, HSBC determined that the fraud claim should remain denied. (Id.)

**Response:** Disputed.  See response to paragraph 16 *supra*.

18.    On May 7, 2020, Rubin again called HSBC from Rubin's Telephone Number regarding his fraud claim and was informed that HSBC had been unable to reach Detective Pareeds. (Id.; Defontes Depo. 21:3-22:13, Ex. 3.)

**Response:** Not disputed.

19.    On May 7, 2020, an HSBC representative again called the New York Police Department regarding the Police Report and this time was able to speak to Detective Pareeds, who advised the HSBC representative of the details in the Police Report but stated that she was unable to obtain any information from the BJ's store, such as surveillance footage, because too much time had passed. (Mossios Depo 105:9-108:6, 109:14-110:7 & Ex. M.)

**Response:** Disputed insofar as the detective's name is Paredes, not Pareeds. Rubin Depo. at 62:16; Rubin/HSBC Calls at HSBC000014.

20.    With no new information to corroborate his fraud claim, on May 7, 2020, HSBC again informed Rubin that his claim remained denied. (Id.)

**Response:** Disputed.  HSBC had received new information, but HSBC disregarded or ignored that information, including by instructing Rubin to send information to an email address that HSBC did not monitor.  Taylor Depo. 144:3–147:24, 149:15–150:4.  This included a fraud alert issued by HSBC itself regarding an attempted charge made at a Target, also in Brooklyn, also made on October 17, 2019, only minutes later on the same day as the BJ's Charge, using the same credit card used to make the BJ's Charge.  *Id.* at 89:6–89:22; 90:9–90:18, 90:22–93:20, 94:22–95:22, 96:13–96:18, 97:3–97:6, 97:19–102:15; Lewis Report 8–9, Watson Depo. 23:4–23:14.  It also included the police report Rubin had filed.  Taylor Depo. 144:3–147:24.

**D.    HSBC Investigates Rubin's Credit Reporting Disputes To The CRAs**

21.    HSBC maintains policies and procedures to handle credit reporting disputes received from CRAs and its policies and procedures are provided to dispute investigators and also used to train dispute investigators. (Taylor Depo. 168:3-169:2 & Ex. H.)

**Response:** Disputed.  Whatever formal policies or procedures HSBC may or may not have had on paper, it did not communicate them to its actual investigators or otherwise train its investigators in them.  Mossios Depo. 31:23–32:5.  Furthermore, HSBC's policies and procedures, such as they were, were incapable of handling credit-reporting disputes.  HSBC would deny any dispute where the card appeared to have been activated from the customer's phone number, unless the customer knew who had stolen and activated the card, had filed a police report naming that person, and was prepared to prosecute that person.  *Id.* 73:5–74:7; Taylor Depo. 57:14–57:16, 58:9–58:13.  This was HSBC's policy, despite having no ability to detect or determine if the activation call had spoofed the customer's phone number.  *Id.* at 52:7–22, 118:2–118:7, 119:8–120:24, 121:13–123:3, 123:17–124:8, 125:8–125:13; DeFontes Depo. 81:6–82:20, 83:5–83:21; Mossios Depo. 41:20–44:18, 85:21–85:25; 91:6–91:23; Watson Depo. 12:21–13:2, 13:21–14:2, 15:23–16:9, 20:9–21:3, 21:10–22:9; Watson Report 5–6.  Indeed, HSBC would not, as a matter of policy, contact the consumer for additional information, even when the consumer had offered to provide additional information as needed, because HSBC did not consider itself to have any obligation to do so.  Taylor Depo. 128:13–129:22.  It maintains this policy even though it is aware that it ought to contact the consumer for more information.  Mossios Depo. 55:8–55:13.  HSBC's formal policy is to ignore or unreasonably discount readily available evidence in the belief that it can somehow "investigate" while ignoring or discounting evidence.  Taylor Depo. at 129:23–131:13; 156:20–158:16.  In fact, HSBC's policy was not to investigate at all in response to disputes received from CRAs, but rather to simply regurgitate the

9

results of its fraud team's previous "investigation," no matter how much additional evidence the consumer might submit.  *Id.* at 114:20–115:13, 115:20–116:4, 130:23–132:20.

22.     A dispute submitted by an HSBC cardholder to a CRA will contain a dispute code reflecting the reason the cardholder selects as the basis of the dispute, and HSBC's policies and procedures direct how HSBC dispute investigators are to handle disputes based on the dispute reason the cardholder chooses. (Id. 168:3-169:2, 171:14-174:10 & Ex. H.)

**Response:** Not disputed.

23.     HSBC designates its fraud department to investigate disputes that HSBC receives from CRAs related to fraud. (Id. 173:7-175:22.)

**Response:** Disputed.  HSBC does not designate its fraud department to investigate disputes that HSBC receives from CRAs related to fraud.  HSBC's fraud department only investigates disputes directly from consumers; disputes from CRAs are investigated, to the extent they are investigated at all, by the ACDV operators.  Taylor Depo. 36:10–12, 36:23, 39:22–40:10, 41:5–41:13, 41:25, 43:4–43:21, 51:12–51:19, 128:13–133:25.  The ACDV operator, however, has no authority to overturn the results already produced by the fraud investigation team.  *Id.* at 128:13–133:25, 172:19–173:5, 175:23–176:18; Mossios Depo. 123:17–124:4.  Furthermore, the ACDV operator relied on the phone call activation information provided by Brian DeFontes, despite not knowing who DeFontes was or what his role was.  *Id.* at 113:10–113:24; DeFontes Depo. 74:17–79:11.

24.     Each time Rubin submitted a dispute to the CRAs, HSBC reviewed the information the CRAs provided with Rubin's dispute and conducted a holistic review of its records for the Account that corresponded to the disputed information, such as the Account application, the Account activation information, Account notes and activity on the Account. (Id.

171:1-174:18, 176:15-177:17.) Also as part of its investigation into Rubin's credit reporting disputes, HSBC reviewed notes from its fraud team's investigations of Rubin's fraud claims. (Id.)

   **Response:** Disputed.  HSBC did not conduct a holistic review of its records.  It ignored critical information within its records.  Taylor Depo. 144:3–147:24.  Furthermore, once HSBC had determined that the card had apparently been activated from Rubin's telephone number, it focused on that fact as determinative to the exclusion of all other evidence; only an official determination by the police that the activation and use of the card had been fraudulent would have been enough to change HSBC's mind.  Mossios Depo. 68:4–84:24, 85:5–85:25. Furthermore, HSBC did not review the information the CRAs provided with Rubin's dispute: the CRAs sent HSBC copies of Rubin's dispute letters with all the exhibits that he had included, plus his offer to provide further evidence as needed, but HSBC ignored all that.  Taylor Depo. 114:20–115:13, 115:20–116:4, 126:20–126:23, 127:7–127:10, 128:13–133:25.  HSBC made no effort to contact BJ's Wholesale Club ("BJ's") itself to check if BJ's had security video of the purchase until the middle of October 2021, more than two-and-a-half years after Rubin had made his disputes, and well after this litigation had begun; by that time, BJ's, which only keeps such video for a few months, had already thrown away any security video it had had.  *Id.* at 70:24– 72:5, 72:15–74:8, 74:12–81:9.  HSBC also did not review the copious evidence Rubin had sent via email to HSBC's fraud investigation team.  *See* Rubin Emails with HSBC ("Rubin/HSBC Emails") at Rubin_PL_0401–0451, Ex. 5; Taylor Depo. at 144:23–147:24.

   25.    Rubin believes HSBC failed to reasonably investigate his credit reporting disputes because it continued to hold Rubin responsible for the balance owed on the Account stemming from the BJ's Charge. (Rubin Depo. 55:20-25, 58:24-59:11.)

**Response:** Disputed.  Rubin is not a lawyer and does not have an opinion on a legal matter.  Rubin Depo. 41:10–42:10, 52:7–53:20, 54:15–54:18, 55:20–56:11, 56:16–57:7, 58:2–58:8, 59:5–59:11, 88:3–88:17.  Nevertheless, Rubin believes that HSBC failed to investigate reasonably not merely because HSBC reached the wrong conclusion but because HSBC ignored and discounted the evidence that he provided and because HSBC expected him and others to conduct the investigation for it.  *Id.* 56:16–57:7.  HSBC conducted no real investigation itself, instead simply expecting either Rubin or the police to investigate for them.  It did so even though it knew how difficult it was to get results from the police.  Mossios Depo. 50:24–51:11.  For example, HSBC made no effort to contact BJ's itself to check if BJ's had security video of the purchase until the middle of October 2021, more than two-and-a-half years after Rubin had made his disputes, and well after this litigation had begun; by that time, BJ's, which only keeps such video for a few months, had already thrown away any security video it had had.  Taylor Depo. 70:24–72:5, 72:15–74:8, 74:12–81:9.  Instead, HSBC, following a policy not to do its own investigation unless it had first been sued, simply waited for the police to try to contact BJ's.  *Id.* at 74:12–81:9; 83:19–84:18.  In addition, to reach the conclusion it did, HSBC has taken the unreasonable—indeed, absurd—position that while Rubin did activate the Card and did use it at BJ's, another, unknown person did in fact then take the Card and attempt to use it fraudulently at Target.  *Id.* at 89:6–89:22; 90:9–90:18, 90:22–93:20, 94:22–95:22, 96:13–96:18, 97:3–97:6, 97:19–102:15; Lewis Report 8–9, Watson Depo. 23:4–23:14.

## 1.  The First April 2020 Disputes

26.     On April 3, 2020, Experian sent an Automated Consumer Dispute Verification ("ACDV") form to HSBC, reflecting Rubin's first credit reporting dispute of the Account. (Declaration of Cymone Whitfield (the "Whitfield Decl."), ¶ 10.)

12

**Response:** Not disputed.

27.     The ACDV that HSBC received from Experian on April 3, 2020, contained the dispute code "104," which translates to "Consumer claims account take-over, fraudulent charges made on account." (Whitfield Decl. ¶ 8, EXPERIAN_20-CV-4566_000027.)

**Response:** Not disputed.

28.     HSBC investigated this dispute from Experian and, as part of its investigation, HSBC reviewed: (1) the information Rubin submitted as part of the dispute; (2) Account notes in HSBC's system of record, including the method of Account activation; (3) Rubin's earlier fraud claim, including the documentation that HSBC received as part of Rubin's fraud claim, the notes that were reviewed as part of the fraud claim, and the outcome of the fraud investigation. (Taylor Depo. 172:21-174:18.)

**Response:** Disputed.  HSBC did not investigate.  HSBC's activities did not constitute an investigation because they did not include the documentation that HSBC received as part of Rubin's fraud claim, because HSBC ignored documentation that Rubin submitted to the email address HSBC had given him because no one at HSBC was monitoring that email address. Taylor Depo. 144:3–147:24, 149:15–150:4.  Also, HSBC did not investigate insofar as HSBC never interviewed a single witness, discounted much of the evidence Rubin had submitted, ignored its own determination that the attempted purchase at Target was fraudulent, and relied upon its initial fraud investigation completed days after the fraud despite evidence that Rubin submitted afterward, treating the purported telephone number match as entirely decisive. Supplemental Responses of Defendant HSBC Bank USA, N.A. to Plaintiff's First Set of Interrogatories, Interrogatory 15, Ex. 2; Taylor Depo. 64:10–68:12, 89:6–89:22; 90:9–90:18, 90:22–93:20, 94:22–95:22, 96:13–96:18, 97:3–97:6, 97:19–102:15, 128:13–133:25; Mossios

Depo. 47:2–48:4, 59:7–59:22, 68:4–84:24, 85:5–85:25, 94:10–94:23, 95:6–95:15; Lewis Report 8–9, Watson Depo. 23:4–23:14.  And again, HSBC did not review the information Rubin had submitted as part of the dispute: the CRAs sent HSBC copies of Rubin's dispute letters with all the exhibits that he had included, plus his offer to provide further evidence as needed, but HSBC ignored all that.  Taylor Depo. 114:20–115:13, 115:20–116:4, 126:20–126:23, 127:7–127:10, 128:13–133:25.  Furthermore, HSBC made no effort to contact BJ's itself to check if BJ's had security video of the purchase until the middle of October 2021, more than two-and-a-half years after Rubin had made his disputes, and well after this litigation had begun; by that time, BJ's, which only keeps such video for a few months, had already thrown away any security video it had had.  *Id.* at 70:24–72:5, 72:15–74:8, 74:12–81:9; Mossios Depo. 109:13–109:23, 110:4– 110:9.  Instead, HSBC, following a policy not to do its own investigation unless it had first been sued, simply waited for the police to try to contact BJ's.  Taylor Depo. 74:12–81:9; 83:19–84:18; Mossios Depo. 111:12–112:4.

29.     On April 7, 2020, following an investigation into Rubin's dispute, HSBC responded to Experian's ACDV, noting that "Account information accurate as of the date reported." (Whitfield Decl. ¶ 10.)

**Response:** Disputed.  See response to paragraph 28 *supra*.

30.     HSBC's records reflect that, also on or about April 7, 2020, HSBC received a credit reporting dispute from Equifax Information Services, LLC ("Equifax"). (HSBC's Response to Plaintiff's Request for Admission No. 8; Taylor Depo. 33:7-34:13.)

**Response:** Not disputed.

31.     HSBC investigated the credit reporting dispute it received from Equifax and, as part of that investigation, HSBC reviewed the Account notes, including notes regarding the

Account application, Account activation, notes from the fraud department regarding Rubin's confirmation that he did in fact apply for the Account, and documentation provided to HSBC. (Taylor Decl. ¶ 4.)

**Response:** Disputed.  See response to paragraph 28 *supra*.

32.    As with the April 2020 Experian ACDV, following its investigation of the dispute, HSBC responded to the Equifax ACDV in April 2020, and verified the accuracy of the information it furnished to Equifax about the Account. (HSBC's Response to Plaintiff's Request for Admission No. 28.)

**Response:** Disputed.  See response to paragraph 28 *supra*.  HSBC also did not "verif[y]" the accuracy of the information it had furnished, because to verify means "to establish the truth, accuracy, or reality of," meaning that one cannot logically verify that which is false.  Merriam-Webster Dictionary, entry for "verify," Ex. 18.  HSBC merely responded, falsely and in violation of § 1681s-2(b), that the account was accurately reporting.  Taylor Depo. 155:13–155:17; Dispute Responses at EIS - Rubin 000097, EIS - Rubin 000145, EXPERIAN_20-CV-4566_000027–29, Ex. 4.

**2.  The Second April 2020 Dispute**

33.    On April 12, 2020, Experian sent another ACDV to HSBC, reflecting Rubin's second credit reporting dispute of the Account. (Whitfield Decl. ¶ 11.)

**Response:** Not disputed.

34.    This second ACDV that HSBC received from Experian contained the dispute code "104," which translates to "Consumer claims account take-over, fraudulent charges made on account." (Whitfield Decl. ¶ 8, EXPERIAN_20-CV-4566_000028.)

**Response:** Not disputed.

35.     HSBC investigated and, as part of its investigation, HSBC reviewed: (1) the information Rubin submitted as part of the dispute; (2) Account notes in HSBC's system of record, including the method of Account activation; (3) Rubin's earlier fraud claim, including the documentation that was received as part of the fraud claim, the Account notes that were reviewed as part of the fraud claim, and the outcome of the fraud investigation. (Taylor Depo. 175:23-176:12.)

**Response:** Disputed.  See response to paragraph 28 *supra*.

36.     On April 13, 2020, following its investigation of Rubin's second dispute to Experian, HSBC responded to Experian's ACDV and noted the following: "Account information accurate as of the date reported." (Whitfield Decl. ¶ 11.)

**Response:** Disputed.  See response to paragraph 28 *supra*.

**3. The July 2020 Disputes**

37.     On July 17, 2020, Experian sent another ACDV to HSBC reflecting Rubin's credit reporting dispute. (Whitfield Decl. ¶ 13.)

**Response:** Not disputed.

38.     This ACDV form that HSBC received from Experian contained the dispute code "103," which translates to "true identity fraud, account fraudulently opened." (Whitfield Decl. ¶ 8, EXPERIAN_20-CV-4566_000029.)

**Response:** Not disputed.

39.     HSBC investigated and, as part of its investigation, HSBC reviewed the Account notes, including notes regarding the Account application, Account activation, notes from the fraud department regarding Rubin's confirmation that he did in fact apply for the Account, and documentation provided to HSBC. (Taylor Depo. 164:5-165:10; 176:15-177:17.)

16

**Response:** Disputed.  See response to paragraph 28 *supra*.

40.    On July 20, 2020, following its investigation of the July 2020 Dispute, HSBC responded to the dispute and noted the following: "Account information accurate as of the date reported." (Whitfield Decl. ¶ 13.)

**Response:** Disputed.  See response to paragraph 28 *supra*.

41.    HSBC's records reflect that, on or about July 14, 2020, HSBC received a second credit reporting dispute from Equifax. (Taylor Depo. 33:7-34:13; HSBC's Response to Plaintiff's Request for Admission No. 15.)

**Response:** Not disputed.

42.    HSBC investigated the credit reporting it received from Equifax and, as it did when investigating the Experian ACDV, it reviewed the Account notes, including notes regarding the Account application, the Account activation, notes from the fraud department regarding Rubin's confirmation that he did in fact apply for the Account, and documentation provided to HSBC. (Taylor Decl. ¶ 5.)

**Response:** Disputed.  See response to paragraph 28 *supra*.

43.    On or about July 14, 2020, following its investigation of the dispute, HSBC responded to the Equifax ACDV and verified the accuracy of the information it furnished to Equifax about the Account. (HSBC's Response to Plaintiff's Request for Admission No. 30.)

**Response:** Disputed.  See response to paragraphs 28 and 32 *supra*.

**E.    A Third Internal Team at HSBC Reviewed Rubin's Fraud Claim.**

44.    In May 2020, following its denial of Rubin's fraud claim, Rubin was advised to contact HSBC's executive office, also referred to as the presidential team, in part because he

threatened to file a lawsuit against HSBC. (Taylor Depo. 85:12-86:13.) Thereafter, Rubin contacted HSBC's executive office/presidential team. (<u>Id.</u> 86:14-16.)

**Response:** Not disputed.

45.     The presidential team at HSBC is an internal team tasked with investigating complaints that are received at a higher level and that team conducts an independent review of the actions that HSBC took when handling fraud claims, including whether or not the decision process was handled correctly. (<u>Id.</u> 84:22-85:11.)

**Response:** Disputed.  The presidential team did not conduct an independent review; it simply reviewed the results produced earlier by the ACDV operator.  Taylor Depo. 137:19–138:8.

46.     The presidential team reviewed Rubin's claim and determined that the claim should remain denied. (<u>Id.</u> 86:14-19.)

**Response:** Not disputed.

## II. Additional Statements of Material Fact

1.      Rubin never received the credit card ("Card") for the Account and never possessed it.  Rubin Decl. ¶ 8, Ex. 1; Rubin Depo. 43:21–44:17, 48:12–49:5, 54:15–54:18; Deposition of Heske Van Doornen ("Van Doornen Depo.") 16:1–17:25, Ex. 8; Deposition of Christina Rubin ("Christina Rubin Depo.") 11:20–11:24, 41:4-41:17, 57:10–58:18, 59:1–60:19, Ex. 9; Rubin/HSBC Calls at HSBC0000142–143.

2.      Rubin did not activate the Card.  Rubin Decl. ¶ 8; Rubin Depo. 48:12–49:5, 54:15–54:18; Lewis Report 9.

3.      Rubin did not use the Card to make the BJ's Charge or any other charges, nor did he authorize anyone else to do so.  *Id.* 34:8–35:8, 36:6–37:1, 51:17–52:3, 52:17–53:20, 54:15–54:18, 87:10–87:19; Rubin Decl. ¶ 9; Van Doornen Depo. 16:1–17:25; Christina Rubin Depo. 74:19–75:6; Deposition of Greg Kessler ("Kessler Depo.") 11:21–12:1, 12:7–12:10, 13:20–14:16, Ex. 10; Rubin/HSBC Calls at HSBC0000142–143; Lewis Report 9.

4.      No member of Rubin's family made any charges on the Card.  Rubin Depo. 36:6–37:1; Van Doornen Depo. 16:1–17:25; Christina Rubin Depo. 50:16–51:1.

5.      Rubin never had a membership at BJ's Wholesale Club and so could not have made the BJ's Charge.  Rubin Decl. ¶ 14; Rubin Depo. 51:17–52:3; Van Doornen Depo. 16:1–17:25; Lewis Report 9.

6.      Rubin also did not know anyone who had a BJ's Wholesale Club membership and so could not have authorized anyone else to make the BJ's Charge.  Rubin Depo. 51:17–52:3; Van Doornen Depo. 16:1–17:25; Lewis Report 9.

7.      Rubin was over a hundred miles away from the BJ's Wholesale Club where the BJ's Charge was made at the time it was made, and so could not have made the BJ's Charge for

that reason as well.  Rubin Decl. ¶¶ 10–13; Rubin Depo. 90:10–92:11; Taylor Depo. 86:16–87:5, 87:11–87:19; Kessler Depo. 20:15–22:8, 25:15–26:7, 36:7–41:15; Rubin/HSBC Emails at Rubin_PL_0401–0404 *et seq.*; Lewis Report 9.  He was also over a hundred miles from the Target where the thief attempted to make a purchase at the time the thief so attempted.  Rubin Decl. ¶¶ 15–19.

8.      An unknown third party took the Card, activated it, and used it to make the BJ's Charge and to attempt to make a charge at Target that same day, all without Rubin's knowledge, consent, or authorization.  Rubin Decl. ¶¶ 9, 15; Rubin Depo. 43:4–43:14; Van Doornen Depo. 16:1–17:25; Christina Rubin Depo. 43:2–45:1; Lewis Report 9.

9.      Rubin communicated these facts in his disputes to HSBC and in his disputes to the credit bureaus.  Rubin Decl. ¶¶ 21–23, 32–45; Rubin Depo. 50:11–51:7, 54:15–54:18; 90:10–92:11; Dispute Responses at EIS - Rubin 000097, Ex. 4; *see generally* Credit Disputes, Ex. 3.

10.     HSBC, after supposedly investigating Rubin's disputes, never reached any conclusion about whether Rubin ever received the Card.  HSBC's Response to Rubin's Request for Admission, ¶ 1, Ex. 2.

11.     HSBC, after supposedly investigating Rubin's disputes, never reached any conclusion about who attempted to use the Card to make purchases at Target on the same day that the Card was used to make the BJ's Charge.  *Id.* at ¶ 2, Ex. 2.

12.     Rubin reported the theft of the Card to the US Postal Service.  Rubin Decl. ¶¶ 23–26; USPS Email Confirmation, Ex. 20.  Rubin notified HSBC that he had reported the theft to the Postal Service.  Rubin Decl. ¶ 23; Mossios Depo. 49:2–49:10.

13.     Rubin also reported the theft of the Card in person to the New York Police Department.  Rubin Decl. ¶ 30; Credit Disputes at EXPERIAN_20-CV-4566_000001, Ex. 3.

This police report stated that Rubin had reported that the Card had been stolen from the mail, that the thief had activated the Card and then used it to make the BJ's Charge and the attempted Target charge.  *Id.*  Rubin notified HSBC that he had reported the theft to the police.  Rubin Decl. ¶¶ 31–32; *see also* Dispute Responses at EIS - Rubin 000097, Ex. 4; Rubin/HSBC Calls at HSBC000013.  He also included a copy of the police report with his disputes to the credit bureaus.  Credit Disputes at EIS - Rubin 000001, EIS - Rubin 000038, EIS Rubin 000133–144, Ex. 3.  The credit bureaus notified HSBC of the police report; *see also* Dispute Responses at EIS - Rubin 000097, Ex. 4.

14.    HSBC did not perform an investigation.  It ignored evidence that Rubin sent to the email address that HSBC had provided to him, because no one was monitoring that email address.  Rubin Decl. ¶¶ 34–41; Taylor Depo. 144:3–147:24, 149:15–150:4.  It also disregarded or discounted other evidence including: a) the report to the Postal Service and the police report; Mossios Depo. 49:6–50:9; 68:4–68:14; b) the fact that the Card was maxed out on the same day that it was activated; *id.* 47:20–48:4; Taylor Depo. 90:22–93:20, 94:22–95:22, 96:13–96:18, 97:3–97:6, 97:19–102:15; Lewis Report 8; Watson Depo. 23:4–23:14; c) that the attempted Target charge, attempted on the same day as the BJ's Charge, was flagged as fraudulent by its own fraud department.  Mossios Depo. 47:2–48:4, 93:9–94:24; Taylor Depo. 89:6–89:22; 90:9–90:18, 90:22–93:20, 94:22–95:22, 96:13–96:18, 97:3–97:6, 97:19–102:15; Lewis Report 8–9, Watson Depo. 23:4–23:14.  It made no effort to contact BJ's to check if BJ's had security video of the purchase until the middle of October 2021, more than two-and-a-half years after Rubin had made his disputes, and well after this litigation had begun; by that time, BJ's, which only keeps such video for a few months, had already thrown away any security video it had had.  Taylor Depo. 70:24–72:5, 72:15–74:8, 74:12–81:9.  Instead, HSBC, following a policy not to do

its own investigation unless it had first been sued, simply waited for the police to try to contact BJ's. *Id.* at 74:12–81:9; 83:19–84:18.  Mossios Depo. 109:13–110:9.  It also disregarded evidence that Rubin was over a hundred miles away from the BJ's where the BJ's Charge was made at the time it was made.  Mossios Depo. 69:22–71:14, 79:13–80:9; Taylor Depo. 86:16–87:5, 87:11–87:19; Rubin Depo. 90:10–92:11.  It never interviewed any witnesses. Supplemental Responses of Defendant HSBC Bank USA, N.A. to Plaintiff's First Set of Interrogatories, Interrogatory 15, Ex. 2.  It relied entirely on the facts that the person who made the activation call knew the card number, CVC code, the last four digits of Rubin's Social Security number, and that the telephone number from which came the activation call appeared to match Rubin's telephone number.  Mossios Depo. 72:16–73:18, 82:2–85:20.  It did so despite the fact both the card number and CVC code would have been on the Card itself, that an identity thief could have obtained the last four digits of Rubin's Social Security number in any number of ways, and that it had no ability to detect phone-number spoofing, which itself is easy to accomplish.  DeFontes Depo. 29:6–31:3, 81:6–82:20, 83:5–83:21; Taylor Depo. 118:2–118:7, 119:8–120:24, 121:13–123:3, 123:17–124:8, 125:8–125:13; Mossios Depo. 25:5–25:9, 41:20–44:18, 91:6–91:23; Watson Depo. 12:21–13:2, 13:21–14:2, 15:23–16:9, 20:9–21:3; Watson Report 5–6.  HSBC also never contacted Verizon, Rubin's telephone service provider, to attempt to confirm that the activation call actually came from Rubin's telephone, until after this litigation commenced.  Taylor Depo. 142:19–144:2; Watson Depo. 18:16–18:25.  Even when it did so, it did not request Automatic Number Identification data from Verizon, which might have allowed it to detect spoofing after the fact.  *Id.* 15:23–16:9, 18:16–18:25, 20:9–21:3, 21:10–22:9, 23:4–23:14.  HSBC also did not review the copious evidence Rubin had sent via email to HSBC's

fraud investigation team.  *See* Rubin/HSBC EMails at Rubin_PL_0401–0451; Taylor Depo. at 144:23–147:24.

15.     HSBC's fraud investigator received only a month of formal training in fraud detection in general and lacked any formal training for his specific position.  Mossios Depo. 16:11–17:6, 19:10–19:25, 21:6–21:12.  In particular, he had no training in how to detect if a credit card had been activated fraudulently.  *Id.* 23:2–24:3, 25:15–26:6.  He was given no manual of investigation procedures or other written guidance.  *Id.* 31:23–32:5.  He was assigned to handle fraud investigations after no more than three months of observing other investigators. 21:13–22:8.  He lacked any knowledge of telephone-number spoofing or how to detect it.  *Id.* 44:10–44:18, 85:21–85:25, 91:67–91:23.  He would not, as a matter of policy, have reversed his finding of no fraud unless the police determined that there had been fraud and identified the perpetrator, against whom Rubin would have had to press charges.  *Id.* 82:20–84:24. Furthermore, the bulk of whatever investigative work HSBC did in this matter was handled abroad, even though HSBC was well aware that there were serious problems with its overseas investigative work.  Taylor Depo. 154:14–154:20; Mossios Depo. 116:18–116:23, 117:2–117:8, 120:10–120:22, 121:17–122:6.

16.     HSBC was well aware of the common problem of credit cards being stolen from the mail.  Taylor Depo. 46:7–9, 122:12–123:3, 124:22–24.  Indeed, the New York Attorney General recently sent a report to the Postmaster General regarding mail theft, particularly "theft of financial documents—such as checks, credit cards, and banking statements in the state."  She further stated that constituent complaints of mail theft crimes were "numerous," and that the problem appeared to be "unabated" and required "redouble[d]" attention.  The report also warned that mail theft "can be used to facilitate identi[t]y theft and other crimes."  Letter of New York

Attorney General to Postmaster General, Ex. 19.  Rubin notified the credit bureaus in his disputes that the card had been stolen out of the mail by an identity thief and used by that identity thief to make the BJ's Purchase.  *See* Dispute Responses at EIS - Rubin 000097, Ex. 4.  Because of the way mail was delivered and distributed in the building where Rubin was living at that time, he was particularly vulnerable to mail theft, and had suffered missing mail before.  Rubin Decl. ¶ 27; Rubin Depo. 43:21–47:17; Van Doornen Depo. 18:9–18:19; Christina Rubin Depo. 21:1–22:3, 24:8–35:14, 45:15–50:2; Kessler Depo. 22:9–24:15, 28:16–30:9.  HSBC, however, did not investigate this but nevertheless concluded that the charge was valid.  Mossios Depo. 49:6–49:21.  HSBC has still not changed its position that Rubin was responsible for the BJ's charges.  Taylor Depo. 167:3–167:23, 168:8–168:13.  HSBC's actions have damaged Rubin's reputation for creditworthiness and caused him to suffer credit denials, as well as other harms.  Rubin Decl. ¶¶ 33, 45–52; Rubin Depo. 63:4–63:18, 71:12–73:17, 86:7–86:16, 94:18–94:25; Van Doornen Depo. 15:12–15:24, 21:22–22:14; Christina Rubin Depo. 68:2–70:21, 75:7–79:21.

17.     HSBC's conduct throughout this matter was reckless.  Rubin contacted HSBC repeatedly both directly and through disputes to the credit bureaus, and each time, HSBC behaved in the same way.  HSBC Letter-Motion in Support of Its Request for Pre-Motion Conference to Motion for Summary Judgment at 3.  HSBC had multiple opportunities to perform a proper investigation but never did so.  Mossios Depo. 82:20–84:24.  Instead, HSBC simply reviewed its original investigation several times and, as a matter of policy, refused to change its decision to deny Rubin's fraud claim or to conduct reasonable investigations of Rubin's credit report disputes. Taylor Depo. 63:23–87:19.  HSBC is still falsely holding Rubin responsible for the BJ's purchases.  Rubin Depo. 38:19–38:25.

Dated:  August 9, 2023

/s/ Adam G. Singer
Adam G. Singer
LAW OFFICE OF ADAM G. SINGER, PLLC
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, NY 10165
T: 212.842.2428
E: asinger@adamsingerlaw.com
Attorney for Plaintiff David Rubin