UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID RUBIN,

       Plaintiff,

-against-

HSBC BANK USA, NA; EQUIFAX
INFORMATION SERVICES LLC; and
EXPERIAN INFORMATION
SOLUTIONS, INC.,

       Defendants.

**MEMORANDUM AND ORDER**

Case No. 20-CV-4566 (FB)

*Appearances:*
*For the Plaintiff*:
ADAM G. SINGER
RICHARD KRAUS
Law Office of Adam G. Singer, PLLC
One Grand Central Place 60 E. 42nd
Street, Suite 4600
New York, NY 10165

KEVIN MALLON
Mallon Consumer Law Group, PLLC
165 Broadway, 23rd Floor
New York, NY 10006

*For the Defendants*:
BRIAN C. FRONTINO
KINGLSEY NWAMAH
Morgan, Lewis & Bockius LLP
600 Brickell Avenue
Miami, FL 33131

**BLOCK, Senior District Judge:**

       Pursuant to the Fair Credit Reporting Act ("FCRA"), Plaintiff David Rubin ("Rubin") brought this action against Defendants HSBC Bank USA, NA ("HSBC"), Equifax Information Services LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian"). Defendants Equifax and Experian have

1

reached confidential settlements with Rubin and have been dismissed from the case. The remaining Defendant, HSBC, now moves for summary judgment. For the following reason, HSBC's motion is denied.

## I.  BACKGROUND

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation. The facts are undisputed unless otherwise noted. The Court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in that party's favor. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).

The dispute concerns alleged credit-card fraud. On or around October 9, 2019, Rubin applied for an HSBC Gold MasterCard, which HSBC approved. HSBC shipped the credit card to Rubin's home address, but Rubin contends that he never received the card in the mail and accordingly reported the theft to the New York Police Department ("NYPD") and United States Postal Service ("USPS").

On October 17, 2019, a caller using Rubin's telephone number activated the account by providing (1) the 16-digit HSBC credit card number, (2) the 3-digit CVC number, and (3) the last four digits of Rubin's Social Security account. Rubin suspects that a thief may have used a "spoofing" method to disguise the call as having come from his phone number. HSBC had no anti-spoofing measures in

2

place at the time.  Two minutes later, HSBC received another call that appeared on Rubin's phone number but that lasted only 79 seconds.

The same day the account was activated, October 17, 2019, a $1,850.85 purchase using the card was made at BJ's Wholesale, Inc. ("BJ's").  Rubin states that he does not have a BJ's membership required to make the purchase and was over a hundred miles away from where the purchase was made.  Minutes after the BJ's purchase, the card was used to make an additional purchase at Target, but HSBC flagged the attempted purchase as fraudulent and blocked use of the card.

Because of the attempted Target purchase, HSBC sent Rubin a fraud alert.  Rubin then contested the BJ's purchase as fraudulent.  HSBC allegedly investigated the fraud dispute, but its policy was to deny disputes where the card appeared to have been activated from the consumer's telephone number unless the consumer knew who had stolen and activated the card.  HSBC subsequently denied the fraud dispute.  When Rubin failed to make the payment, HSBC reported the account as delinquent to consumer reporting agencies ("CRAs") and former parties in this litigation, Experian and Equifax.

Rubin again disputed the subject account with the CRAs, which transmitted the disputes to HSBC.  HSBC once again denied Rubin's disputes and verified the charges to the CRAs.  Rubin subsequently sued HSBC, alleging that it had violated

the FCRA by failing to conduct a proper investigation of his dispute in negligent and/or wilful violation of the FCRA.  *See* 15 U.S.C. § 1681s–2(b)(1).

## II. DISCUSSION

To prevail on a claim under 15 U.S.C. § 1681s–2(b), Rubin must establish that "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in 'willful or negligent noncompliance with the statute.'"  *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012).  Furnishers have a duty to "investigate disputed information after receiving notice of a dispute concerning the completeness or accuracy of information from a [CRA]."  *See Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2010).  It is undisputed that HSBC is a furnisher that received notice of Rubin's dispute from a CRA, which triggers its obligations under the FCRA.  *See Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012).  Rubin proceeds under both negligence and wilfulness theories.[1]  *See* 15 U.S.C. § 1681s-2(b).

---

[1] The remedies differ, with "willful noncompliance" providing punitive damages, inter alia.  *Compare* 15 U.S.C. § 1681n (willful noncompliance) *with* 15 U.S.C. § 1681o (negligent noncompliance).

4

### A. Rubin Presents a Cognizable Issue Under the FCRA

Rubin's case presents a classic identity-theft, or fraud, allegation. A threshold question raised by HSBC is whether such a claim is cognizable under 15 U.S.C. § 1681s-2(b). The answer is an emphatic yes.

Section 1681s–2(b) requires furnishers to determine if furnished information is "incomplete or inaccurate." 15 U.S.C. § 1681s–2(b). Accordingly, inaccuracy is "an essential element of a claim for negligent or willful violation of § 1681s–2(b) of the FCRA." See Artemov v. TransUnion, LLC, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020).

Other circuit courts have held that this inaccuracy must be a factual inaccuracy, rather than a legal inaccuracy. See, e.g., Chiang v. Verizon New England Inc., 595 F.3d 26, 38 (1st Cir. 2010). Previously, district courts in the Second Circuit applied the same standard. See, e.g., Holland v. Chase Bank USA, N.A., 475 F. Supp. 3d 272, 276-77 (S.D.N.Y. 2020) (plaintiff's argument that debts had been discharged due to the purported running of the relevant state's statute of limitations was a claim of legal inaccuracy).

However, in two recent cases, Mader v. Experian Info. Sols., Inc., 56 F.4th 264 (2d Cir. 2023) and Sessa v. Trans Union, LLC, 74 F.4th 38 (2d Cir. 2023), the Second Circuit clarified its construction of "inaccuracy" under another FCRA provision, 15 U.S.C. § 1681e(b), which imposes duties on *CRAs*, rather than

*furnishers*. *Sessa* held that "there is no bright-line rule providing . . . that only purely factual or transcription errors are actionable under the FCRA"; rather, "in determining whether a claimed inaccuracy is potentially actionable under section 1681e(b), a court must determine, inter alia, whether the information in dispute is 'objectively and readily verifiable.'" *Sessa*, 74 F.4th at 43 (citing *Mader*, 56 F.4th at 269).

Regardless of whether *Mader*/*Sessa* has changed the analysis for § 1681s-2(b) claims against furnishers, this case easily presents a justiciable FCRA issue. The sole question is purely factual — whether Rubin or someone else activated the account and made the BJ's purchase. District courts routinely find similar claims of fraud or identity theft cognizable.[2] *See, e.g.*, *Suluki v. Credit One Bank, NA*, No. 21-CV-1156 (SHS), 2023 WL 2712441, at *5 (S.D.N.Y. Mar. 30, 2023) (question of fact regarding whether plaintiff's mother opened plaintiff's subject account); *see*

---

[2] HSBC misconstrues a recent Eleventh Circuit concurrence by Judge Rosenbaum, *see Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1221 (11th Cir. 2023) (Rosenbaum. J., concurring), by claiming that the "FCRA is not the proper recourse for alleged victims of identity theft." But Judge Rosenbaum merely explained that a consumer could *also* use a declaratory-judgment action to challenge a bank's determination and noted that the FRCA is an imperfect vehicle to challenge alleged fraud because a plaintiff proceeds "only indirectly: an insufficiently supported conclusion can be evidence of an unreasonable investigation." *Id.* at 1222. But whether a "better" option exists for Rubin is immaterial — this Court sits to adjudicate cases and controversies, *see* U.S. CONST. art. 3, § 2, cl. 1, and Rubin's FCRA claim is cognizable.

*also Simonson v. IQ Data Int'l, Inc.*, No. 22-CV-215-JDP, 2023 WL 6810090, at *6 (W.D. Wis. Oct. 16, 2023) (finding that information furnisher provided CRA was "inaccurate" because it was the product of identity theft); *Lara v. Experian Info. Sols., Inc.*, 625 F. Supp. 3d 1062, 1074 (S.D. Cal. 2022) (denying summary judgment in alleged identity-theft case); *Romero v. Monterey Fin. Servs., LLC*, No. 19–CV–1781 JM (KSC), 2021 WL 268635, at *4 (S.D. Cal. Jan. 27, 2021) (same); *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 848-49 (E.D. Va. 2017) (finding that bank's reporting that plaintiff opened and was responsible for the account was "inaccurate").

This outcome is the only sensible one from a policy perspective. The reason courts shield furnishers from resolving legal disputes is because "furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[ ] on questions that can only be resolved by a court of law.'" *Renee Lamando v. Rocket Mortgage*, No. 3:23-CV-147 (MAD/ML), 2024 WL 264034, at *11 (N.D.N.Y. Jan. 24, 2024) (quoting *Chiang*, 595 F.3d at 38). Accordingly, "while an FCRA claim can be actionable when a defendant does not apply readily verifiable and straightforward law to facts, when the matter is one of unsettled law, without instruction from statutes or caselaw, the matter is not cognizable under the FCRA." *Id.* at *10.

But here, determining whether Rubin opened the account and made the BJ's purchase does not require HSBC to resolve intricate legal questions. And there

7

could hardly be a better party positioned to address Rubin's concerns: HSBC and other creditors face hundreds of thousands of cases of alleged credit-card fraud each year. Furnishers such as HSBC thus "stand in a far better position to make a thorough investigation of a disputed debt." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022) (cleaned up). And notwithstanding HSBC's protestations to the contrary, that factual inaccuracies have legal implications does not render them exempt from the FCRA's ambit — by virtue of being brought under the FRCA, every cognizable factual inaccuracy *necessarily* has legal implications. Accordingly, Rubin's claim may proceed.

### B. The Reasonableness of HSCB's Investigation

The next issue is whether HSBC satisfied its statutory investigatory duty. Although the Second Circuit has not yet decided the "specific contours" of the furnisher's duties, courts within and outside the Second Circuit have assumed an objective reasonableness standard for "judging the adequacy of the required investigation." *See Dickman*, 876 F. Supp. 2d at 172 (quoting *Okocha v. HSBC Bank USA, N.A.*, 700 F.Supp.2d 369, 374 (S.D.N.Y.2010)); *see also DeSiena v. Pennsylvania Higher Educ. Assistance Agency*, No. 22-1956, 2023 WL 4044109, at *1 (2d Cir. June 16, 2023) ("furnishers must 'reasonably investigate' upon receiving notice of a dispute regarding the completeness or accuracy of reported information").

The Court therefore analyzes the reasonableness of HSBC's response "in light of what the furnisher learned about the nature of the dispute from the description in the CRA's notice of dispute." *Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2018 WL 1583289, at *7 (S.D.N.Y. Mar. 27, 2018) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)) (cleaned up). Generally, the question of reasonableness in FCRA cases presents a fact question for the jury. *Amendoeira v. Monogram Credit Card Bank of Georgia*, No. CV-05-4588, 2007 WL 2325080, at *2 (E.D.N.Y. Aug. 7, 2007); *Rosenberg v. Cavalry Invs.*, LLC, No. 3:03CV1087(RNC), 2005 WL 2490353, at *5 (D. Conn. Sept. 30, 2005) (collecting cases).

This case is no different. Rubin has presented more than sufficient evidence to defeat HSBC's motion for summary judgment. Rubin provided specific evidence contesting the allegedly fraudulent charge, including GPS data indicating that Rubin was not at the BJ's at the time of the charge and a witness prepared to attest to the same effect, as well as the police report he filed.

In light of the highly specific information he provided the CRAs and HSBC, *cf. Jenkins v. LVNV Funding, LLC*, No. 14-CV-5682 (SJF) (AKT), 2017 WL 1323800, at *12 (E.D.N.Y. Feb. 28, 2017) (granting defendant summary judgment because plaintiff "neither identified a specific item in his credit reports that he alleged to be inaccurate nor provided a basis for examining underlying account

9

material in investigating his dispute"), Rubin compellingly argues that HSBC's internal processes were insufficient.  The Automated Consumer Dispute Verifications ("ACDV") operator lacked the authority to overturn HSBC's previous finding that no fraud occurred, could not detect whether a spoofed number was used to verify Rubin's account, and failed to contact Verizon, Rubin's phone provider, to determine whether the activation call came from Rubin's telephone.  Indeed, HSBC admits that because someone had activated the subject account using Rubin's proper information, it was going to deny Rubin's fraud claim no matter the additional evidence Rubin provided of fraud.  Accordingly, drawing all inferences in Rubin's favor, a reasonable factfinder could conclude that HSBC failed to reasonably investigate Rubin's dispute.

Other courts have found that similar investigations by furnishers present issues of material fact.  In a leading case on the issue, the Fourth Circuit concluded that an investigation limited to looking at information already contained in the creditor's system raised material issue of fact.  *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *see also Hudson v. Babilonia*, 192 F. Supp. 3d 274, 302 (D. Conn. 2016) (furnisher's reliance on previous investigation into fraud claim presented issue of fact because previous investigation may have been unreasonable); *Wood*, 277 F. Supp. 3d at 851-52 (bank's investigations of the plaintiff's disputes were "cursory" when the bank merely matched the

10

complainant's personal information with the information on the account). Here, Rubin proffers deposition evidence that HSBC failed to reasonably review pertinent information regarding the suspicious circumstances surrounding the BJ's charge. *See Dickman*, 876 F. Supp. 2d at 174 ("questions of fact exist regarding whether Verizon conducted a sufficiently reasonable investigation in compliance with Section 1681s–2(b)"); *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010) (material issues of fact as to whether the defendants undertook reasonable investigations).

## C. Willful Violation of the FCRA

Finally, HSBC moves for summary judgment on Rubin's claim that HSBC was willful in violating the FCRA. "Willfulness can be found on either a knowing or reckless basis." *See Suluki*, 2023 WL 2712441, at *8. A company acts in reckless disregard of the FCRA where it "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). In addition to the reasons discussed above, Rubin presents deposition evidence that it was HSBC's "policy at the time" that it was not going to consider "any information that Mr. Rubin provided to the [CRAs]" because it had previously determined Rubin's claim was not fraudulent. Taylor Dep., 130:5 – 133:17. Thus, drawing all inferences in Rubin's favor, a reasonable jury could conclude that HSBC's policy

of not reviewing additional information Rubin provided to the CRAs recklessly violated its statutory investigatory duties under the FCRA.

### III.   CONCLUSION

For the foregoing reasons, HSBC's motion for summary judgment is DENIED.  A jury will determine whether HSBC negligently or willfully violated the FCRA by failing to reasonably investigate Rubin's dispute and damages.

**SO ORDERED.**

                                                             _/S/ Frederic Block_____
                                                             FREDERIC BLOCK
                                                             Senior United States District Judge

Brooklyn, New York
February 16, 2024