UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID RUBIN,

                Plaintiffs,

   -against-

HSBC BANK USA, NA, EQUIFAX
INFORMATION SERVICES LLC, AND
EXPERIAN INFORMATION
SOLUTIONS, INC.,
                Defendants.

**MEMORANDUM
AND ORDER**
Case No. 20-CV-4566

*For the Plaintiff:*
ADAM G. SINGER
Law Office of Adam G. Singer, PLLC
60 E. 42nd Street, Ste 4600
New York, NY 10165

*For the Defendant:*
BRIAN FRONTINO
Morgan, Lewis & Bockius LLP
600 Brickell Avenue
Miami, FL 33131

**BLOCK, Senior District Judge**:

Pursuant to the Fair Credit Reporting Act ("FCRA"), Plaintiff David Rubin

("Rubin" or "Plaintiff") brought this action against Defendants HSBC Bank USA,

NA ("HSBC" or "Defendant"), Equifax Information Services LLC ("Equifax"), and

Experian Information Solutions, Inc. ("Experian"). After Equifax and Experian

reached settlements with Rubin and were dismissed from the case, HSBC settled

with Plaintiff for $250,000 plus costs and attorneys' fees. Plaintiff filed this motion

for attorneys' fees, costs, and expenses, seeking $728,998 in attorneys' fees, $5,565

in taxable costs, and $15,450 in non-taxable expenses. For the following reasons,

Plaintiff's motion is GRANTED to the extent that Plaintiff is awarded $550,506.50 in attorneys' fees, $5,565 in taxable costs, and $15,450 in non-taxable expenses.

## I.   OVERVIEW

The party seeking a fee award must establish both the reasonableness of the rates charged and the necessity for the hours spent. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Defendant challenges the reasonableness of the hourly rates sought for four lawyers, one law clerk/associate and a paralegal, as well as the reasonableness of the time they spent. The requested hourly rates are as follows: For the four lawyers, $1,185, $795, $760, and $445; for the law clerk, $325 when a law clerk and $445 as an associate; for the paralegal, $125.

Defendant asserts that Plaintiff "fails to offer any satisfactory evidence to justify why the Court should deviate from the recently articulated law of this District, which provides that a reasonable hourly rate is '$300-$450 per hour for partners, $200-$300 per hour for senior associates, $100-$200 per hour for junior associates, and $70-$100 per hour for paralegals.'" Dkt. 150 at 1 (citing *Zaslavsky v. Weltman, Weinberg & Reiss Co, LPA*, 2022 WL 1003589, at *11 (E.D.N.Y. Jan 5, 2022)).

This decision will explain why those rates have no currency and what the new rates should be.

## II.    BACKGROUND

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation. The facts are undisputed.

The dispute concerns alleged credit-card fraud. Around October 9, 2019, Rubin applied for an HSBC Gold MasterCard, which HSBC approved. HSBC shipped the credit card to Rubin's home address, but Rubin contends that he never received the card in the mail and accordingly reported the theft to the New York Police Department ("NYPD") and the United States Postal Service ("USPS").

On October 17, 2019, a caller using Rubin's telephone number activated the account by providing (1) the 16-digit HSBC credit card number, (2) the 3-digit CVC number, and (3) the last four digits of Rubin's Social Security account. Rubin suspects that a thief may have used a "spoofing" method to disguise the call as having come from his phone number. HSBC had no anti-spoofing measures in place at the time. Two minutes later, HSBC received another call from Rubin's phone number that lasted only 79 seconds.

That same day, a $1,850.85 purchase using the card was made at BJ's Wholesale, Inc. ("BJ's"). Rubin did not have a BJ's membership required to make the purchase and was over a hundred miles away from where the purchase was made. Minutes after the BJ's purchase, the card was used to make another purchase at

Target. But HSBC flagged that attempted purchase as fraudulent and disabled the card.

At that point, HSBC sent Rubin a fraud alert. Rubin then contested the BJ's purchase as fraudulent. HSBC allegedly investigated the fraud dispute but had a policy to deny disputes involving cards seemingly activated from a consumer's telephone number unless the consumer knew who had stolen and activated the card. Accordingly, HSBC denied the fraud dispute. When Rubin failed to make the payment, HSBC reported the account as delinquent to consumer reporting agencies ("CRAs") and the former parties in this litigation, Experian and Equifax.

Rubin again disputed the subject account with the CRAs, which transmitted the disputes to HSBC. HSBC once again denied Rubin's disputes and verified the charges to the CRAs. Rubin subsequently sued HSBC, alleging that it had violated the FCRA by failing to conduct a proper investigation of his dispute in negligent and/or willful violation of the FCRA. *See* 15 U.S.C. § 1681s–2(b)(1).

Ultimately, after failed settlement negotiations and the Court's denial of Defendant's motion for summary judgment, the parties settled the litigation for $250,000 plus attorneys' fees and costs.

# III. DISCUSSION

## A. <u>Attorneys' Fees</u>

As the Second Circuit's decision in *Arbor Hill* reflects, arriving at the right calculus for fixing attorneys' fees has bedeviled courts for years. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). The challenge entailed harmonizing the traditional "lodestar" approach with the so-called *Johnson* approach. As the Second Circuit explained in *Simmons*:

> In *Arbor Hill,* we undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time under the traditional "lodestar" approach to attorney's fees (the product of the attorney's usual hourly rate and the number of hours worked, which could then be adjusted by the court to set "the reasonable fee"), and the separate "*Johnson*" approach (a one-step inquiry that considered twelve specified factors to establish a reasonable fee). 493 F.3d at 114. Relying on the substance of both approaches, we set forth a standard that we termed the "presumptively reasonable fee." *Id.* at 118. We directed district courts, in calculating the presumptively reasonable fee, "to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 117 (emphasis in original). The presumptively reasonable fee boils down to "what a reasonable, paying client would be willing to pay," given that such a party wishes to "spend the minimum necessary to litigate the case effectively." *Id.* at 112, 118.

*Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).[1] The Circuit Court subsequently reinforced this analysis in *Lilly v. City of New York*, 934 F.3d 222, 227–30 (2d Cir. 2019).

The presumptively reasonable fee is calculated by multiplying the reasonable hourly rate by the reasonable number of hours worked. *See Arbor Hill*, 522 F.3d at 183; *Lilly*, 934 F.3d at 230. Determining the reasonable hourly rate begins by applying the "forum rule," which requires courts to "generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Arbor Hill*, 522 F.3d at 192 (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)); *see also Simmons*, 575 F.3d at 174.

### 1. Reasonable Hourly Rate

#### a. The Forum Rule

Throughout the years a body of caselaw has evolved in the Eastern District establishing these forum rule rates. As will be seen, *infra,* they have been the same for at least the past thirteen years. How they were derived is a mystery. There is no well-articulated rationale. Conceptually, the rates are supposed to reflect "what a

---

[1] *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110 (2d Cir. 2007) was amended and superseded by *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008).

reasonable, paying client would be willing to pay," given that such a party wishes to "spend the minimum necessary to litigate the case effectively." *Arbor Hill,* 493 F.3d at 118. It is a lofty standard, but it is fantastical. How is anyone able to calculate what that mystical reasonable paying client was willing to pay?

Historically, the Eastern District courts have been making reasonability determinations for decades out of whole cloth. Predictably, the rates found to be reasonable 30 or 40 years ago were lower than the current ranges. They tended to climb upward in fits and starts, rather than evolving in a systematic, discernible fashion correlated to that nebulous "reasonable paying client" standard. *See. e.g.*, *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 171 (E.D.N.Y. 2004) ("[T]he Court deems the following rates to have been prevailing in the Eastern District of New York in the early to mid-1990s: $200 and up for partners (the higher end of the scale reserved for highly experienced partners in the relevant field); $125–$155 for associates; and $65–$75 for law clerks."). Travelling further back in time, one finds correspondingly lower reasonable-rate determinations. *See, e.g.*, *Barr v. United Parcel Serv.*, 1987 WL 18779, at *3 (E.D.N.Y. Oct. 14, 1987) (finding reasonable rate for pre-1993 work to be $100 per hour).

Adjustments and increases to those rates have tended to come in an ad hoc fashion based on indeterminate factors, including inflation. *See, e.g.*, *Orshan v. Macchiarola*, 629 F. Supp. 1014, 1021 (E.D.N.Y. 1986) ("[T]he reasonable hourly

rate [determined to now be $125 per hour] should reflect historic rates, with consideration given to inflation and the delay in the attorney's receipt of payment"); *Priv. Sanitation Union Loc. 813, Int'l Bhd. of Teamsters v. Gaeta-Serra Assocs., Inc.*, 2005 WL 2436194, at *3 (E.D.N.Y. Aug. 12, 2005), *R & R adopted*, 2005 WL 2429311 (E.D.N.Y. Sept. 30, 2005) (citing *King* and finding slightly higher rates reasonable after "adjusting for inflation").

Moreover, with two exceptions, the courts have not prescinded between the nature or type of case. Although "[s]ometimes legal markets may be defined by practice area," *Arbor Hill*, 522 F.3d at 192, this apparently has never been the case in the Eastern District. Thus, as an example, although *Zaslavsky* was a Fair Debt Collection Practices Act ("FDCPA") case, the same hourly rates have also been applied for partners in FCRA cases, although they are a world apart. *See Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 411 (S.D.N.Y. 2019); *Rodriguez v. Pressler & Pressler, LLP*, 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009); *Rudler v. Houslanger & Assocs., PLLC*, 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020). The FDCPA governs the conduct of third-party debt collectors, and caps actual damages at $1,000. 15 U.S.C. § 1692k(a)(2)(A). In contrast, the FCRA allows punitive damages, 15 U.S.C. § 1681n, for destroying one's credit, raising the stakes, and resulting in potentially protracted litigation. Such, presumably, was this case,

which explains how Plaintiff's initial loss of $1,850.85 blossomed into the $250,000 settlement.

There are other examples of the habit of the Eastern District courts to refrain from setting different rates for different practice areas since the current rates were fixed many years ago. *See, e.g.*, *Pall Corp. v. 3M Purification Inc.*, 2012 WL 1979297, at *4 (E.D.N.Y. June. 1, 2012) (finding "reasonable hourly rates to be approximately $300-$450 for partners, $200-325 for senior associates, and $100-$200 for junior associates" for intellectual property cases;[2] *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) (same for Title VII cases); *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 252 (E.D.N.Y. 2020) (same for § 1983 cases); *Sung v. Top Sys. Alarm Inc.*, 2024 WL 2312455, at *6 (E.D.N.Y. May 22, 2024) (same for Fair Labor Standards Act ("FLSA") cases); *U.S. ex rel. Doe v. Acupath Lab'ys. Inc.*, 2015 WL 1293019, at *6 (E.D.N.Y. Mar. 19, 2015) (same for *qui tam* cases); *Lowery v. Fire Talk LLC*, 2020 WL 5441785, at *6 (E.D.N.Y. June 29, 2020), *R & R adopted*, 2020 WL 542768 (E.D.N.Y. Sept. 10, 2020) (same for copyright infringement cases); *Cleanup v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 404 (E.D.N.Y, 2019) (same for environmental cleanup cases); *US Foods, Inc. v. Kokoro*

---

[2] The court also fixed the hourly rate for paralegals at $75. But the range was soon thereafter fixed at $70-$100. *Janus v. Regalis Const., Inc.*, 2012 WL 3878113, at *12 (E.D.N.Y. July 23, 2012), *R & R adopted*, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

*Partners, LLC*, 2023 WL 3007171, at *1 (E.D.N.Y. Apr. 19, 2023) (same for breach of contract cases); *Kindle v. Dejana*, 308 F. Supp. 3d 698, 704 (E.D.N.Y. 2018) (same for ERISA cases). It has basically been a "one shoe fits all" dynamic.

The courts, of course, have appropriately considered a host of variables, such as the *Johnson* factors,[3] in fixing the fee within the range. But awarding fees outside the range is reserved for rare occasions. *See Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 553–54 (2010) (finding that fee can be more or less than the forum fee "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee"). Those occasions would require "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id.* at 554; *see, e.g.*, *Simmons*, 575 F.3d at 175 (explaining that out-of-district counsel can only be selected "because doing so would likely (not just possibly) produce a substantially better net result").

There are a handful of cases in the Eastern District where courts have awarded hourly rates above the forum rule range of $300 to $450 for partners. *See Aptive*

---

[3] These are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989).

*Env't, LLC v. Vill. of E. Rockaway*, 2022 WL 5434178, at *4 (E.D.N.Y 2022) (citing EDNY cases awarding $600 hourly rates). But, in keeping with the Supreme Court's caveat in *Perdue*, they are best viewed as rare cases.

Notably, the Second Circuit in *Lilly* has cautioned, in discussing *Perdue*, "that the novelty and complexity of a case generally may not be used as a ground for an enhancement or reduction because those factors are already reflected in the reasonable hourly rate and reasonable hours billed (*i.e.*, the lodestar)." *Lilly*, 934 F.3d at 232. It recognized, however, that the *Johnson* factors "may also, in exceptional cases, determin[e] whether an enhancement or cut to the lodestar is warranted." *Id.* at 233.

As for the two exceptions: first, courts grant a percentage-of-the-award fee in class action litigation pursuant to the factors set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).[4] Second, higher hourly rates are the norm in social security cases, but they are a unique carveout because Congress statutorily authorizes a reasonable fee of up to "25% of the total of the past due benefits to which the claimant is entitled." 42 U.S.C. § 406(b); *see also Fields v. Kijakazi*, 24 F.4th 845, 855–56 (2d Cir. 2022) ("Lawyers who operate on contingency—even the

---

[4] These are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50.

very best ones—lose a significant number of their cases and receive no compensation when they do."); *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990) ("In the absence of a fixed-fee agreement, payment for an attorney in a social security case is inevitably uncertain, and any reasonable fee award must take account of that risk."); *McDonald v. Kijakazi*, 635 F. Supp. 3d 721, 725 (S.D. Iowa 2022) ("Because attorneys in these cases face significant risk of not being paid, courts allow hourly rates of up to $1,000 an hour.").

\* \* \*

There is yet another dynamic at play. As reflected in the compilation of the cases showing that the same rates have been applied regardless of the practice area, *supra,* the Eastern District courts have been regurgitating these rates for many years without updating them for inflation and market conditions. For example, in *Rodriguez,* the court fixed the hourly rate for partners in 2009 at $300-$450. 2009 WL 689056 at \*1. But the first case which this Court's research located fixing *all* the current hourly rates for partners, associates, junior associates and paralegals was in 2012 in *Pall Corp.*, 2012 WL 1979297 at \*4. Rates have also remained stagnant in virtually all other cases. *See, e.g.*, *Sass*, 6 F. Supp. 3d at 261 (same rates for Title VII case in 2014); *Acupath Lab'ys. Inc.*, 2015 WL 1293019 at \*6 (same rates for *qui tam* case in 2015); *Kindle*, 308 F. Supp. 3d at 704 (same rates for ERISA case in 2018); *Cleanup*, 373 F. Supp. 3d at 404 (same rates for environmental cleanup case

12

in 2019); *Torcivia*, 437 F. Supp. 3d at 252 (same rates for § 1983 case in 2020); *Lowery*, 2020 WL 5441785 at *6 (same rates for copyright infringement case in 2020); *Kokoro Partners*, 2023 WL 3007171 at *1 (same rates for breach of contract case in 2023); *Sung*, 2024 WL 2312455 at *6 (same rates for FLSA case in 2024).

They are classic examples of blind adherence to outdated precedent and a perfect example of the pitfalls in following the calf's path.

I.

One day through the primeval wood
A calf walked home as good calves should;

But made a trail all bent askew,
A crooked trail as all calves do.

Since then three hundred years have fled,
And I infer the calf is dead.

II.

But still he left behind his trail,
And thereby hangs my moral tale.

The trail was taken up next day,
By a lone dog that passed that way;

And then a wise bell-wether sheep
Pursued the trail o'er vale and steep,

And drew the flock behind him, too,
As good bell-wethers always do.

And from that day, o'er hill and glade.
Through those old woods a path was made.

III.

And many men wound in and out,
And dodged, and turned, and bent about,

And uttered words of righteous wrath,
Because 'twas such a crooked path;

But still they followed—do not laugh—
The first migrations of that calf,

And through this winding wood-way stalked
Because he wobbled when he walked.

IV.

This forest path became a lane,
That bent and turned and turned again;

This crooked lane became a road,
Where many a poor horse with his load

Toiled on beneath the burning sun,
And traveled some three miles in one.

And thus a century and a half
They trod the footsteps of that calf.

V.

The years passed on in swiftness fleet,
The road became a village street;

And this, before men were aware,
A city's crowded thoroughfare.

And soon the central street was this
Of a renowned metropolis;

And men two centuries and a half,

Trod in the footsteps of that calf.

VI.

Each day a hundred thousand rout
Followed the zigzag calf about

And o'er his crooked journey went
The traffic of a continent.

A Hundred thousand men were led,
By one calf near three centuries dead.

They followed still his crooked way,
And lost one hundred years a day;

For thus such reverence is lent,
To well established precedent.

Sam Foss, *The Calf-Path*, Poets.org, https://poets.org/poem/calf-path (last visited Jan. 17, 2025) (I–VI).

I always read this poem to my new law clerks and yet I must confess to recently following the calf's path myself. *See Kokoro Partners*, 2023 WL 3007171 at *1 (approving hourly rates in 2023 for up to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals).

Times have changed. "[A]ttorney's fees, like other goods and services, increase in cost with inflation." *Almond v. PJ Far Rockaway, Inc.*, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018). Retaining the same rates as far back as at least 2012 is no longer sustainable. Moreover, it runs counter to the admonition of the Supreme Court that the lodestar should be "current rather than historic hourly rates."

*Gerlinger v. Gleason,* 160 F.3d at 858, 882 (2d Cir. 1998) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)); *see also LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2d Cir. 1998) (instructing district court on remand in seven-year litigation to apply "current rates, rather than historical rates").

But what should the new rates be? Adjusted for inflation, the rates used in *Pall Corp* in 2012 would be the following today:

|  | **2012** | **2025**[5] |
|---|---|---|
| **Partners** | $300-$450 | $413-$619 |
| **Senior Associates** | $200-$300 | $275-$413 |
| **Junior Associates** | $100-$200 | $137-$275 |
| **Paralegals** | $70-$100 | $96-$137 |

Inflation is the general increase in prices of goods and services, which results in a decrease in the purchasing value of money. The average inflation rate over the past thirteen years was 2.6% per year, with an anomalous peak of 8% in 2022.[6]

---

[5] Adjusted for inflation and rounded up. CPI Inflation Calculator, U.S. Bureau of Labor Statistics, https://www.bls.gov/data/inflation_calculator.htm (last visited Jan. 20, 2025). The latest inflation data available as of the time of this opinion is from December 2024. As a matter of common sense, the Court believes in all probability that it would essentially be the same rate as of January 1, 2025.

[6] *See* Current US Inflation Rates: 2000-2025, US Inflation Calculator, https://www.usinflationcalculator.com/inflation/current-inflation-rates/ (last visited Jan. 20, 2025). Note that while both footnotes 5 and 6 refer to inflation calculators, the

Inflation rates have since decreased to 4.1% in 2023 and 2.9% in 2024.[7] Despite the high inflation rate of 2022, updating for inflation to 2025 is logical for three reasons.

First, inflation is a cumulative measure. The rate of inflation in the single year of 2022 is just one data point in a thirteen-year period. What matters is the total change in purchasing power from 2012 to 2025, not the change in any single year. Second, real purchasing power is the relevant consideration. $450 in 2012 represented a specific amount of purchasing power—the goods and services one could buy with that money. To buy the same basket of goods in 2025, it cost $619.[8] Third, historical accuracy requires including all years. Opting to ignore certain years of inflation because they seem abnormal would create an inaccurate picture of how prices changed. High inflation years are as much a part of economic history as low inflation years; both must be included to properly track changes in purchasing power.

Adjusted for inflation and market conditions,[9] I have rounded out the forum

---

website for this footnote lists inflation rates for every year between 2000 and 2025, while the calculator in footnote 5 calculates the amount that money is worth in a particular year.

[7] *Id.* Of course, the inflation rate for 2025 has yet to be calculated.

[8] *See* U.S. Bureau of Labor Statistics, *supra* note 5.

[9] *See* William Josten, *What the "State of the US Legal Market" report showed about law firm billing rate performance in 2023 and where it may go in 2024*, THOMSON REUTERS (Feb. 5, 2024), https://www.thomsonreuters.com/en-us/posts/legal/sotlm-2024-law-firm-billing-rate-performance/ ("It's important to note that growth in law firm rates was not pegged to inflation, but nevertheless, the result remained that law firms typically had a comfortable cushion above one of the forces driving increases in their expenses. However, that cushion disappeared in 2022 as inflation spiked. For the first time, the relationship between average law firm worked rates and inflation actually inverted, giving law firms a basis upon which to seek higher rate increases.")

rates in the Eastern District to now be $450-$650 for partners,[10] $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals. Moreover, some stability is sensible in order to avoid having to establish new rates every year; accordingly, barring major inflationary deviations, I would not revisit them for five years.

### b. Application

Having adjusted the forum rule ranges, the Court must now determine the reasonable hourly rates for each attorney and the paralegal.

### Robert Sola

Sola, a partner, seeks an hourly rate of $1,185. To support the claimed hourly rate, he relies on his experience litigating FCRA cases since 1997, serving as lead trial counsel in several. Dkt. 146 at 4–7. He does not have a standard hourly rate in New York City. *Id.* at 3.

FCRA cases tend to be more complex than simpler consumer cases like FDCPA suits because of the availability of punitive damages and the ensuing increased stakes. This case involved expert witnesses, numerous discovery disputes, eleven depositions, and a motion for summary judgment.

---

[10] The highest end for partners is warranted since the old $300-$450 rate dates back to at least 2009. See *Rodriguez*, 2009 WL 689056 at *1.

While the Court recognizes Sola's qualifications, his requested $1,185 hourly rate exceeds the updated new forum rate. But his skills and consummate qualifications warrant a fee at the highest end of the hourly range. The Court therefore fixes his hourly rate at $650.

### Kevin Mallon

Mallon, a partner, seeks an hourly rate of $795. He has been litigating consumer cases for 24 years and specializing in FCRA cases for 19 years. Dkt. 145 at 4–5. He has spoken at multiple FCRA conferences. *Id.*

The Court finds that the issues in this case do not warrant that hourly rate. Mallon has less experience litigating FCRA cases than Sola. Considering the updated hourly rates in this District and all other *Johnson* factors, the Court reduces Mallon's hourly rate to $620.

### Adam Singer

Singer, a partner, seeks an hourly rate of $760. He has been practicing law for 20 years and specializing in FCRA cases for 13 years. Dkt. 135 at 1–3. He has spoken at multiple FCRA conferences. *Id.* at 2–3.

While Singer and Mallon have similarly impressive qualifications, Singer has been specializing in FCRA cases for six fewer years. Considering the updated hourly rates in this District and all other *Johnson* factors, the Court reduces Singer's hourly rate to $600.

*Richard Kraus*

Kraus, presumably a senior associate, seeks an hourly rate of $445. Kraus has been practicing law since 2017 and litigating FCRA cases since 2021, when he joined Singer's law office. Dkt. 140 at 1. Considering the updated hourly rates in this District and all other *Johnson* factors, the Court reduces Kraus' hourly rate to $350.

*Noah Kane*

Kane seeks an hourly rate of $325 as a law clerk and $445 as presumably a junior associate. He joined Singer's law office as a law clerk in September 2022 and became an associate when he was admitted to practice in New York in January 2023. *Id.* at 4.

"Judges in [the EDNY] generally compensate law clerks at the same rates as paralegal assistants." *Burkett v. Houslanger & Assocs., PLLC*, 2020 WL 7000188, at *3 (E.D.N.Y. July 23, 2020), *R & R adopted as modified*, 2020 WL 5834429 (E.D.N.Y. Sept. 30, 2020). Considering the updated hourly rates in this District and all other *Johnson* factors, the Court reduces Kane's hourly rate as a junior associate to $275 and hourly rate as a law clerk to $125.

*Thomas Guarino*

Guarino seeks an hourly rate of $125. He has been working as a paralegal for 7 years.  Dkt. 140 at 6. Considering the updated hourly rates in this District and all

other *Johnson* factors, the Court now considers Guarino's hourly rate of $125 to be reasonable.

## 2. Reasonable Number of Hours

The Court determines that collectively the attorneys and the paralegal reasonably expended 1331.1 hours of time, as evidenced by well-documented and detailed explanations of their work. [11] *See Dagostino*, 238 F. Supp. 3d at 413 (holding fee applications should be supported by contemporaneously created time records that specify, for each attorney, date, hours expended, and nature of the work done)

Defendant argues that the hours billed are excessive for a straightforward FCRA case. HSBC challenges the billing practices on several grounds: duplicative work performed by multiple attorneys reviewing the same documents and attending the same conferences; unnecessary time spent on fruitless third-party subpoenas; improper billing of clerical tasks at attorney rates; and inflated hours spent on routine legal research and writing. Based on these alleged deficiencies, Defendant seeks a 50% reduction in the claimed hours.

---

[11] The Court did not expend judicial resources to independently confirm that Plaintiff has correctly calculated each of the time charges given the prohibitively time-intensive nature of such an undertaking. Courts "need not, and indeed should not, become green-eyeshade accountants." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 2019 WL 2870721, at *3 (E.D.N.Y. June 18, 2019) (citation omitted), *R & R adopted*, 2019 WL 2869150 (E.D.N.Y. July 3, 2019).

The Court finds these arguments unpersuasive. Defendant's characterization of this case as being straightforward is at odds with its own litigation conduct and the exceptional result of a $250,000 settlement. Defendant engaged in aggressive discovery resistance, filed numerous motions, and delayed production of key witnesses.

And despite arguing that these hours should be decreased by 50%, Defendant specifically identifies only 2% of the time billed as unnecessary. But Defendant's arguments about even those 18.3 hours miss the mark for three reasons. First, the involvement of multiple attorneys reflects strategic collaboration rather than inefficiency. Second, Defendant's own aggressive litigation strategy necessitated many of these hours. Third, the hours were well-spent and necessary considering the successful results obtained—including the favorable settlement and denial of Defendant's summary judgment motion. Thus, the Court deems reasonable the hours claimed by counsel.

Therefore, the presumptively reasonable fee is $550,506.50, calculated as follows:

| Name | Hourly Rate | Hours | Total |
| --- | --- | --- | --- |
| Robert Sola | $650 | 27.10 | $17,615 |
| Kevin Mallon | $620 | 206.70 | $128,154 |
| Adam Singer | $600 | 295.4 | $177,240 |
| Richard Kraus | $350 | 528.2 | $184,870 |
| Noah Kane (Associate) | $275 | 56.1 | $15,427.50 |
| Noah Kane (Law Clerk) | $125 | 4.4 | $550 |
| Thomas Guarino | $125 | 213.2 | $26,650 |
| **Total** | | **1331.1** | **$550,506.50** |

## B. Costs & Expenses

"An award of costs normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (internal quotation marks and citation omitted). "The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs." *Id.*

Plaintiff requests $5,565 in taxable costs and $15,450 in non-taxable expenses. Defendant argues that $3,440 should be deducted from costs to be awarded

to Plaintiff because Defendant incurred these costs when Plaintiff deposed Defendant's expert witness. *See* Fed. R. Civ. P. 26(b)(4)(E) ("Unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A)[.]").

Be that as it may, the FCRA's fee-shifting provision is one-sided, enabling only the prevailing party to recover costs. 15 U.S.C. § 1681o(a)(2). Defendant did not prevail. Thus, any costs awarded to Plaintiff will not be decreased by the $3,440 that Defendant incurred.

Having reviewed the Singer Reply Declaration, Dkt. 152, the bill for costs, Dkt. 148, and the expenses, Dkt. 137, the Court deems reasonable these out-of-pocket expenses and grants Plaintiff's request for taxable costs and non-taxable expenses.

## IV.    CONCLUSION

The Court awards Plaintiff $550,506.50 in attorneys' fees, $5,565 in taxable costs, and $15,450 in non-taxable expenses, for a total of $571,521.50.

**SO ORDERED.**

_/S/ Frederic_ _Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 21, 2025

24